Matter of the Judicial Settlement of the Account of Proceedings of RANDOLPH WHITE, Public Administrator of the County of Queens, as Administrator, etc., of JOHN JAVOR, Deceased.

(Surrogate's Court, Queens County, June, 1917.)

Decedents' estates — to whom distributive share should be paid — treaties.

> The distributive share of a resident and subject of the kingdom of Hungary, in the estate of a decedent who died in the state of New York, should be directed to be paid to the Swedish consul-general who is the duly authorized representative in the United States of the kingdom of Austria-Hungary.

MOTION to amend *nunc pro tunc* a decree duly entered in a proceeding upon the judicial settlement of an account of the public administrator of the county of Queens.

Harry E. Fajans, for public administrator.

Kramer & Leavitt, for Austro-Hungarian Consul General.

NOBLE, S. This is a motion to amend, *nunc pro tunc*, as of the 25th day of April, 1917, a decree duly entered judicially settling the account of the public administrator of the county of Queens, as administrator of estate of said decedent, by providing therein that the distributive share of John Javor, father of said decedent, a non-resident alien, residing in and a

subject of the Kingdom of Hungary, shall be paid to Magnus Clarholm, Swedish consul-general, in charge of Austro-Hungarian interests at the Port of New York, for and in behalf of said John Javor, instead of providing for the payment of such distributive share direct to said John Javor.

Objection to such amendment was made orally by Mr. Charles J. Masone, deputy attorney-general of the state of New York, who questioned the right of the Swedish consul general to receive moneys in behalf of subjects of the kingdom of Hungary, in view of the fact of the severance of diplomatic relations between that country and the United States.

In reply to an inquiry addressed by the deputy attorney-general to the department of state at Washington, D. C., he was informed that, as a state of war does not exist between the United States and Austria-Hungary, the question of the right of the Swedish consul-general to receive such moneys would seem to depend, on the one hand, on the laws of the state of New York, and on the other hand, on the laws of Austria-Hungary, and possibly of Sweden, relating to the rights and duties of their consular officers.

The deputy attorney-general thereupon withdrew his objections, and as I am satisfied that under the treaties existing between the United States and the kingdom of Austria-Hungary the consul-general of Austria-Hungary would have a right to receive any and all funds to which subjects of those countries might be entitled, were such an official here, and it appearing that the Swedish consul-general has taken charge of Austro-Hungarian interests in this country, pursuant to an agreement with the Austro-Hungarian government, and with the consent and approval of the United States government, there is no doubt in my mind that the Swedish consul-gen-

eral is, for the present at least, the duly authorized representative in the United States of the kingdom of Austria-Hungary, and the motion to amend is therefore granted.

Motion granted.